SOUTHWESTERN TELEGRAPH & TELEPHONE CO. v. CORBETT.

(Court of Civil Appeals of Texas. Texarkana. May 9, 1912. Rehearing Denied June 6, 1912.)

1. TELEGRAPHS AND TELEPHONES (§ 15*)—WIRES — NEGLIGENT MAINTENANCE — RESPONSIBILITY.

Whether a telephone company is liable for injury to a railway brakeman, struck while standing on a freight car by a wire suspended by the company over railway tracks, depends upon whether the railway company authorized the wire to be so suspended.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 9; Dec. Dig. § 15.*]

2. TELEGRAPHS AND TELEPHONES (§ 15*)—WIRES — NEGLIGENT MAINTENANCE — RESPONSIBILITY.

A telephone company which has suspended a wire over a railway track so low as to strike a brakeman on a passing freight car cannot escape liability for the injury because it acted for a patron whose line was connected with the company's exchange.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 9; Dec. Dig. § 15.*]

3. TELEGRAPHS AND TELEPHONES (§ 15*)—WIRES — NEGLIGENT MAINTENANCE — RESPONSIBILITY.

A telephone company is not liable for injury to a railway employé caused by a wire being suspended too low over a railway track, if it did not construct the line or control it, though it was connected with the company's lines as a convenience to the individual owner of the line.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 9; Dec. Dig. § 15.*]

Appeal from District Court, Harrison County; H. T. Lyttleton, Judge.

Action by C. H. Corbett against the Southwestern Telegraph & Telephone Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Young & Stinchcomb, of Longview, for appellant. Sexton & Ryan, of Marshall, for appellee.

WILLSON, C. J. While standing on top of a box car in the discharge of his duty as a brakeman for the Marshall & East Texas Railway Company, appellee was struck by a telephone wire suspended across said railway's track and thereby was injured. He alleged that the wire had been suspended across the track by appellant, and that in so suspending it appellant was guilty of negligence in that it placed the wire "so low," quoting from his petition, "as not to permit plaintiff while standing on a box car * * * to pass under said wire without being knocked down." On the finding of a jury, a judgment for $200 was rendered in his favor.

[1] It appeared from testimony heard on the trial that the wire which struck appellee was suspended across the railway company's track at the instance of one Cavizell (who lived about one-half of a mile beyond the limits of the city of Marshall) for the purpose of connecting his home with appellant's telephone exchange in said city. It further appeared that a wire belonging to Dr. Allen and Philip Craver extended from Harleton, where they lived, and connected to appellant's wires at the Marshall city limits, and that by an arrangement between said Allen and Craver and Cavizell the wire which struck appellee had been connected to the wire belonging to said Allen and Craver, and from the point of connection extended across the railway company's track to Cavizell's home. In this way Cavizell's home was connected with appellant's exchange in Marshall, and he was furnished by appellant with its telephone service.

Appellant contends that it further appeared from the testimony that it did not own the wire which struck appellee, did not place it across the railway company's track, and had no control over it. It insists that the trial court therefore erred in refusing its request that the jury be peremptorily instructed to return a verdict in its favor.

In his brief appellee does not controvert appellant's claim that it did not own or have any control over the wire, but insists that appellant nevertheless was liable because it appeared from the testimony that it placed the wire in the position it occupied across the track and thereafterwards, in furnishing Cavizell with telephone service, used the wire in carrying on its business. That appellant so used the wire and charged Cavizell for service it rendered to him was not dis-

puted. But appellant denied that it placed or had anything to do with placing the wire, and as supporting its denial offered the testimony of one Naendall, its wire chief at Marshall. Naendall testified that he was employed by appellant to work for it from 7:30 a. m. to 5:30 p. m.; that he placed the Cavizell wire across the railway track about 6 p. m., after his day's work for appellant was over, and that in placing it he acted for and was paid for his services by Cavizell. We think, however, there was testimony to support a finding that Naendall acted for appellant in constructing the line across the railway for Cavizell testified that he arranged with appellant to construct it, and after it was constructed paid appellant for constructing it. If appellant, acting for Cavizell, suspended the wire as it was suspended at the time it struck appellee, whether it was liable to appellee or not we think depended upon whether the railway company had authorized it or Cavizell to so suspend the wire or not. Whether the railway company authorized the placing of the wire across its track or not was not shown by the testimony. If it did authorize it, appellant, if it constructed the line, had a right, we think, to assume the railway company would see to it that its trains were operated with reference thereto and would use such precautions as might be necessary to protect its employés from injury by coming in contact with it. If the railway company, having authorized the placing of the wire as it was placed across its track, failed to use such care as it should have used (with reference to the position of the wire) in the discharge of its duty to furnish appellee a safe place to work, it would be liable for injury suffered by him without fault on his part, resulting from the position of the wire.

[2] But if the railway company did not authorize the suspension of the wire across its track, and if appellant suspended it, we do not think the fact that it acted for Cavizell in doing so relieved it of liability to appellee. If Cavizell himself was without authority to so suspend the wire across the track as to interfere with the use the railway company had a right to make thereof, and as to endanger its employés engaged in operating its trains, he could not authorize appellant to so place it. If without being authorized to do so appellant suspended the wire across the track, we see no reason why it should not be held liable to appellee for the consequences to him of its unlawful act.

[3] The court instructed the jury as follows: "If you believe from the preponderance of the testimony in this case that defendant company was, at or about the time named in plaintiff's petition, for the purpose of prosecuting its business and transmitting messages and furnishing telephones for pay, using a telephone line owned by Craver and Allen and Jake Cavizell, and that said line or a part thereof was constructed across the Marshall & East Texas Railway Company's roadbed in such manner as that the same was not high enough above the roadbed to permit persons to pass under the same while standing on one of said company's box cars, and that said line was negligently constructed across said track, and that defendant company knew of said negligent construction, or by the exercise of ordinary care could have known of same, and you further believe that plaintiff, while in the proper and necessary discharge of his duties as brakeman on one of the freight trains of the said Marshall & East Texas Railway Company, was walking on top of a box car in said train, and that while so walking on said car, and without any negligence on his part, was struck by the said wire and knocked down and injured as alleged, then in that event you will find for the plaintiff."

There was no testimony tending to show that the Cavizell wire was charged with electricity at the time it struck appellee, or that the injury to him would not have occurred, or been less than it was, had the wire never been used to carry electricity. In other words, there was no testimony tending to show that the use appellant made of the wire had anything whatever to do with producing the injury he suffered. Therefore we are unable to understand why appellant's use of the wire should have been regarded as material to the question made as to its liability. Nor if it did not construct the Cavizell line, nor have control over it after it was constructed, do we think the fact that it may have been negligently constructed or negligently maintained, and that appellant knew it, was a reason why it should have been held to be liable to appellee. Certainly if Naendall in constructing the line acted for Cavizell and not for appellant, and was guilty of negligence in constructing it, appellant would not be responsible for his negligence. And if it did not control the line after it was constructed, and was not charged with a duty to maintain it, it could not lawfully interfere with it, and therefore could not be held responsible because the line may not have been properly maintained. We think the instruction was erroneous. The assignment attacking it therefore will be sustained, as will also the assignment complaining of the refusal of the court to give a special charge requested by appellant as follows: "If you find from the evidence that it was agreed between the defendant company and Mr. Cavizell that Mr. Cavizell was to construct the line of wire to his house, and was to pay the expenses of said construction, and that said Mr. Cavizell was to maintain or keep up said wire, and that Mr. Cavizell procured Albert Naendall to construct the said wire, and that said Albert Naendall, in constructing the said wire was performing the service for Mr. Cavizell and

was not at the time acting for the defendant company, and that it was not the duty of the defendant company under its contract with Mr. Cavizell to maintain or keep up the wire, you will find for the defendant." As indicated by what has been said, we do not think appellant was liable to appellee if it did not construct the Cavizell line and had no control over it.

The judgment will be reversed and the cause remanded for a new trial.